| | |
|---|---|
| FRANCISCO DEIDA,<br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br>    Respondent. | No. 3:13-cv-1608 (SRU) |

## RULING ON PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

On November 1, 2013, Francisco Deida filed a petition to vacate, set aside, or correct his sentence under section 2255 of Title 28 of the United States Code ("section 2255"). *See* Mot. to Vacate (doc. # 1). Deida has since amended his petition and has filed additional briefing in which he seeks to add arguments that were not raised in his initial petition. I consider Deida's Amended Petition (doc. # 9) and treat Deida's additional briefing in support of that petition as a motion to amend to incorporate additional arguments. I grant that motion to amend and now consider all of the arguments that Deida has raised.

For the reasons set forth below, Deida's Amended Petition is denied.

## I.     Standard of Review

Section 2255 provides a prisoner in federal custody an opportunity to challenge the legality of his sentence. To obtain relief under section 2255, the petitioner must show that his prior sentence was invalid because: (1) it was imposed in violation of the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) it exceeded the maximum detention authorized by law; or (4) it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The standard is a high one; even constitutional errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that

results in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)

(internal citations omitted); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999)

(applying *Brecht*'s harmless error standard to section 2255 petition).

A section 2255 petition "may not be employed to relitigate questions which were raised

and considered on direct appeal." *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992); *see*

*also Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009) (quoting *United States v.*

*Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)). Such limitation prohibits relitigation of issues that were

expressly or impliedly decided on direct appeal. *United States v. Ben Zui,* 242 F.3d 89, 95 (2d

Cir. 2001). A court may only reconsider an earlier decision if it is "confronted with 'an

intervening change of controlling law, the availability of new evidence, or the need to correct a

clear error or prevent manifest injustice.'" *United States v. Becker*, 502 F.3d 122, 127 (2d Cir.

2007) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

Furthermore, a section 2255 petition is not intended to be a substitute for a direct appeal.

*Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Zhang v. United States,*

506 F.3d 162, 166 (2d Cir. 2007)). A court will not review claims that the petitioner failed to

properly raise on direct review "unless the petitioner shows (1) good cause to excuse the default

and ensuing prejudice, or (2) actual innocence . . . ." *Id.* (citing *Bousley v. United States*, 523

U.S. 614, 622 (1998)).

The petitioner bears the burden of proving, by a preponderance of the evidence, that he is

entitled to relief. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995). A district court

is not required to accept the petitioner's factual assertions as credible "where the assertions are

contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209,

214 (2d Cir. 2009). Section 2255 also requires that the district court hold a hearing on the

petitioner's motion unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) ("[A]lthough a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim") (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

## II.   Background

### A.   Indictment and Trial

On June 2, 2009, a grand jury returned an indictment charging Deida with two counts of bank robbery, in violation of 18 U.S.C. § 2113(a).  *See United States v. Gonzalez*, No. 3:09-cr-127 (SRU) (doc. # 1).  On February 4, 2010, the government filed an information, pursuant to 18 U.S.C. § 3559(c) ("three-strikes statute") and 21 U.S.C. § 851, notifying Deida that, should he be convicted, he would be subject to a mandatory life sentence under 18 U.S.C. § 3559(c).[1]  Section 3559(c) requires imposition of a mandatory life sentence for any individual convicted of a qualifying offense if that individual had at least two prior convictions for "serious violent felonies," as defined by section 3559(c)(2)(F).  The information alleged that Deida had the following qualifying convictions: (1) On or about January 21, 1983, Deida was convicted of Robbery in the First Degree, in violation of Connecticut General Statutes § 53a-134(a)(2); (2) on or about January 21, 1983, Deida was convicted of Assault in the First Degree, in violation of Connecticut General Statutes § 53a-59(a)(1); and (3) on or about September 6, 1988, Deida was

---

[1] 18 U.S.C. § 3559(c)(4) provides that the government must use the procedures outlined in 21 U.S.C. § 851(a) to inform the defendant of the prior convictions the government intends to use to support a mandatory sentencing enhancement.

convicted of Manslaughter in the First Degree, in violation of Connecticut General Statutes § 53a-55(a)(1).  *See* Information, *United States v. Gonzalez*, No. 3:09-cr-127 (SRU) (doc. # 41).[2]

At trial, Deida was represented by Donald Cretella.  On March 3, 2010, after a full trial, a jury found Deida guilty of two counts of bank robbery, in violation of 18 U.S.C. § 2113(a).

B.  Sentencing

At Deida's sentencing, on June 21, 2011, I found that the government had proved, by a preponderance of the evidence, that Deida had in fact been convicted of the three prior serious violent felonies identified in the section 851 information.  Because Deida had been convicted of bank robbery, in violation of section 2113(a), after having been convicted of at least two "serious violent felonies," as defined by section 3559(c)(2)(F), I imposed the mandatory term of life imprisonment.

C.  Direct Appeal

On July 6, 2011, Deida filed a Notice of Appeal that (1) challenged my evidentiary rulings; (2) argued that the three strikes provision of section 3559 violates the principle of separation of powers, and (3) argued that prior convictions subjecting a defendant to a statutory sentence enhancement must be found by a jury and not a judge.  *See United States v. Gonzalez*, 682 F.3d 201, 203 (2d Cir. 2012).  The Second Circuit held that (1) Deida's challenges to my evidentiary rulings were not preserved, and even if they were I committed no error; (2) Section 3559 is constitutional; and (3) "prior convictions leading to a recidivism-based statutory

_____

[2] To the extent Deida raises an argument that his first-degree robbery and assault convictions cannot both qualify as serious violent felonies because he was convicted of those offenses simultaneously, such an argument is immaterial, because Deida's enhanced sentence stands so long as I determine that either of those convictions, coupled with the unrelated manslaughter conviction, yields two qualifying convictions under section 3559(c)(2)(F).

sentencing enhancement are not 'elements' of an offense and are to be found by a judge rather than a jury." *Gonzalez*, 682 F.3d at 204.  Deida then petitioned for writ of certiorari to the United States Supreme Court, which was denied on October 29, 2012.  *Deida v. United States*, 133 S. Ct. 553 (2012).

D.  <u>Section 2255 Petition</u>

On November 1, 2013, Deida filed his initial section 2255 petition.  *See* Mot. to Vacate (doc. # 1).  In that motion, Deida asserted seven grounds for relief:

(1) The government violated his Fifth Amendment rights by allowing a witness to falsely testify on behalf of the government;

(2) The government violated his Fifth Amendment rights by relying on manufactured and/or misstated evidence in order to link Deida to the charged offenses;

(3) Deida's counsel was ineffective, in violation of Deida's Sixth Amendment rights, because he failed to move to suppress evidence that was allegedly found in Deida's vehicle;

(4)  Deida's counsel was ineffective, in violation of Deida's Sixth Amendment rights, because counsel failed to investigate and/or present evidence to support Deida's innocence, and for counsel's failure to conduct an effective cross-examination;

(5) Deida's counsel was ineffective, in violation of Deida's Sixth Amendment rights, because he failed to raise "viable issues" on appeal; and

(6) Deida's sentence was illegal, in violation of the Sixth Amendment, because his sentence was based on facts found by a judge, not a jury.

*Id.*

The government responded on May 16, 2014, arguing that the petition should be denied because it was filed more than a year after Deida's conviction became final.  Moreover, the

government argued that there is no evidence to support Deida's allegations of prosecutorial misconduct and ineffective assistance of counsel, and that Deida's remaining arguments are procedurally barred because he failed to raise them on direct appeal.

On August 11, 2014, Deida filed a motion to amend his petition, followed by two memoranda in support of his petition. Docs. # 9–11. In his proposed amended petition, Deida argues that I erred in determining that his prior convictions were "serious violent felonies," as defined by section 3559(c), because I did not properly use the categorical and/or modified categorical approach to make such a determination. Deida also argues that the government failed to follow the requisite procedures outlined in *Shepard v. United States*, 544 U.S. 13 (2005), for proving the fact of Deida's prior convictions. I granted Deida's motion to amend and the government responded on November 4, 2014. The government argued that the three convictions that formed the basis of Deida's enhanced sentence were all categorically "serious violent felonies." Thus, any potential error at sentencing in applying the categorical approach would be harmless. Further, the government argued that I did not rely solely on the Pre-Sentence Report to conclude that Deida had sustained three convictions. Rather, the government argued that I relied on state court documents, including a "mittimus," to support my finding that Deida had been convicted of at least three prior qualifying offenses.

On December 15, 2014, Deida filed a supplemental memorandum in support of his amended petition. In his supplemental memorandum, Deida contends that his 1983 robbery and assault convictions were based on *Alford* pleas and thus there is no proof that Deida admitted the elements necessary for those offenses to be considered "serious violent felonies."

On June 26, 2015, the Supreme Court of the United States decided *Johnson v. United States*, ⸻ U.S. ⸻, 135 S. Ct. 2551 (2015) ("*Johnson*"), holding that the residual clause of 18

U.S.C. § 924(e)(2)(B)(ii) was unconstitutionally vague. Following that decision, on December 14, 2015, I appointed counsel to help Deida argue his section 2255 petition. On July 8, 2016, Deida's appointed counsel filed a memorandum in support of Deida's petition, followed by a supplemental memorandum, which was filed on August 8, 2016. The government responded to those two memoranda in a single opposition, on August 22, 2016. Deida, through counsel, submitted his reply on September 6, 2016.

Because the two supplemental memoranda filed by Deida's appointed counsel raise arguments that were not raised by Deida in his initial or amended petition, I construe them as requesting leave to amend Deida's petition to incorporate such arguments. I grant that motion to amend and accordingly consider all of the arguments that Deida has raised on collateral review.

## III.  Discussion

In his petition for collateral review, Deida challenges his sentence and conviction on multiple grounds. First, Deida raises two claims of prosecutorial misconduct in violation of his Fifth Amendment rights. Second, Deida raises a Sixth Amendment claim based on three separate instances in which he contends his counsel was ineffective. Third, he argues that I erred in imposing his sentence based on a finding that he qualified for a mandatory life sentence pursuant to section 3559(c). In support of his third claim, Deida asserts that his sentence was illegal because (1) his sentence was based on facts found by a judge, not a jury; (2) I failed to properly sentence him using the categorical and/or modified categorical approach; (3) I failed to consider the correct documents in finding that he had been convicted of at least two qualifying offenses; and (4) the sentence imposed was based on a statute that is void for vagueness.

As a preliminary matter, the government argues that I should not consider Deida's Amended Petition because the original petition was untimely filed. The record establishes that

Deida's deadline to file a section 2255 petition expired on October 28, 2013, and Deida's petition was entered into the Court's electronic filing system on November 1, 2013. Although those facts suggest that Deida's initial petition was untimely, Rule 3(d) of the Rules Governing Section 2254 and 2255 Cases provides that a petition "filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing." Rule 3(d), Rules Governing Section 2254 and 2255 Cases. Rule 3 permits an inmate to prove timely filing by providing a declaration in compliance with 28 U.S.C. § 1746 or by submitting a notarized statement. *Id.*

In his initial petition, Deida states that he submitted his petition to prison officials on October 28, 2013. On August 24, 2016, in accordance with Rule 3(d), Deida submitted an affidavit (doc. # 29) that attested to the fact that the petition was given to prison officials for mailing on October 28, 2013. The government has not provided any evidence that the petition was not in fact delivered to prison officials on that date. Moreover, given the time that it takes for mail to be processed by the BOP facility in Beaumont, Texas, sent to Bridgeport, Connecticut, and processed by the Clerk's Office, it is unlikely that Deida submitted the petition on any day after October 28, 2013. Accordingly, I find that the initial petition was timely and I take the arguments raised in the initial and amended petitions in turn.

A. <u>Prosecutorial Misconduct</u>

Deida argues that the government "knew or reasonably should have known that its key witness testified falsely;" and that the government "allegedly linked [Deida] to the charged crimes by relying on evidence . . . [that] arguably was manufactured and/or misstated in order to . . . establish [Deida's] involvement . . . ." Mot. to Vacate at 1.

A conviction will be set aside whenever the prosecutor's tactics cause "substantial prejudice" to the petitioner, thereby depriving him of his right to a fair trial. *United States v. Valentine*, 820 F.2d 565, 570 (2d Cir. 1987). To determine whether prosecutorial misconduct caused the petitioner substantial prejudice, a court must consider three factors: (1) the severity of the misconduct; (2) the measures adopted to cure the effects of the misconduct; and (3) the certainty of conviction in its absence. *Id.* In analyzing the severity of the misconduct, the court may consider the extent to which such misconduct was intentional. *Id.*

In order to challenge a conviction on the ground that the prosecutor knowingly used false testimony, a petitioner must first show that: "(1) there was false testimony, (2) the Government knew or should have known that the testimony was false, and (3) there was 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Helmsley*, 985 F.2d 1202, 1205–06 (2d Cir. 1993) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). In the context of a claim that the prosecutor misstated the evidence, the petitioner "faces a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of his right to a fair trial." *United States v. Coplan*, 703 F.3d 46, 86 (2d Cir. 2012).

When prosecutorial misconduct claims are raised in the context of a section 2255 petition, the petitioner must also assert "cause" for failure to raise such arguments on direct appeal. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991). "Cause" can be established "by showing that the claim is based on newly discovered evidence that could not reasonably have been discovered before trial." *Helmsley*, 985 F.2d at 1206. In *Helmsley*, the Second Circuit noted that it has "never permitted a successful collateral attack for a prosecutor's knowing use of false testimony based entirely on evidence of which the defendant was aware, or in the exercise

of reasonable diligence should have been aware, at trial . . . ." *Id.* at 1208. A defendant who is aware that the prosecution is using false testimony is afforded ample opportunity to challenge that evidence at trial. *Id.* at 1206.

Even if the petitioner is able to show that something external to him—something "that cannot be fairly attributed to him"—prevented him from complying with the procedural rule, *see id.*, the petitioner may only proceed on the claim if he is able to show that he was actually prejudiced by the failure to raise his arguments on direct appeal. *See Wainwright v. Sykes*, 433 U.S. 72, 84 (1977).

Deida's prosecutorial misconduct claims are procedurally barred because he failed to raise them on direct appeal. He does not assert any external factor that prevented him from raising such arguments on direct appeal. Nevertheless, because the portion of his petition that alleged prosecutorial misconduct was written *pro se*, I will construe it liberally as alleging that he was prevented from raising prosecutorial misconduct arguments on account of the ineffectiveness of his attorney. Even if the allegations of ineffective assistance of counsel could establish "cause" for the failure to raise such arguments, the prosecutorial misconduct claims remain procedurally barred because Deida cannot show actual prejudice. Deida is unable to show actual prejudice because his prosecutorial misconduct claims lack merit. Failure to show actual prejudice is fatal to both his ineffective assistance claim and his substantive prosecutorial misconduct claim.

With respect to his claim that the government allowed its primary witness to testify falsely, Deida does not put forward any concrete evidence that might plausibly indicate that any witness testified falsely, let alone any evidence that the government was aware that the witness would testify falsely. Rather, Deida's petition resembles many of the arguments that his counsel

made during closing argument. Such arguments were rejected by the jury, the sole body charged with assessing the truthfulness of the testimony.

With respect to the claim that the government manufactured and/or misstated evidence, Deida does not point to a particular piece of evidence that was either manufactured and/or misstated. "Mere generalities . . . will not normally entitle the applicant to a hearing[.]" *Dalli v. United States*, 491 F.2d 758, 760 (2d Cir. 1974). Rather, the "petitioner must set forth specific facts which he is in a position to establish by competent evidence." *Id.* at 761. Because Deida has put forward no specific evidence of prosecutorial misconduct, those claims lack sufficient merit to warrant a hearing.

B. Ineffective Assistance of Counsel

A petitioner may raise a claim of ineffective assistance of counsel that was not raised previously at trial or on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003). That does not mean, however, that every perceived error or questionable decision by counsel entitles a petitioner to relief. There is a "strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Strickland*, 466 U.S. at 689. The threshold for an ineffective assistance claim is high, and courts have "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox, or downright ill-advised." *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Strickland*, 466 U.S. at 690).

Under *Strickland*, to prevail on an ineffective assistance claim, a defendant must

demonstrate both: (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–88. To satisfy the performance prong, the petitioner must show that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the prejudice prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Thus, the mere possibility that a particular deficiency might have prejudiced the defendant does not warrant relief.

1.   *Below an Objective Standard of Reasonableness*

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *see also, e.g., Mills v. Scully*, 826 F.2d 1192, 1197 (2d Cir. 1987) (same). The habeas court must independently review the evidence, *Kimmelman v. Morrison*, 477 U.S. 365, 378 (1986); however, "[j]udicial scrutiny of counsel's performance must be highly deferential," *Strickland*, 466 U.S. at 690.

"In evaluating the performance prong of an ineffective assistance claim, [courts] do not view the challenged conduct through the 'distorting' lens of hindsight but 'from counsel's perspective at the time.'" *United States v. Gaskin*, 364 F.3d 438, 469 (2d Cir. 2004) (citing *Strickland*, 466 U.S. at 689). Although ineffective assistance claims "invoke critical constitutional principles and are to be taken very seriously," they are "quite often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking.'" *Yick Man Mui v. United States*, 614 F.3d 50, 57 (2d Cir. 2010). It is all too tempting for a defendant to "second-guess

counsel's assistance after conviction or adverse sentence," but the mere fact that the defendant was convicted does not indicate that counsel's performance was objectively unreasonable. *United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991).

        a.   Failure to File Motion to Suppress

Deida first argues that his counsel was ineffective for failing to file a motion to suppress evidence found in a vehicle belonging to him. "In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed." *United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375–76 (1986)). Moreover, defense counsel's decisions regarding what pre-trial motions to file are matters of strategy that courts are generally reluctant to scrutinize on habeas review. *See Gaskin*, 364 F.3d at 468.

It does not appear that the government admitted at trial any evidence that was obtained from a vehicle belonging to Deida. In other words, there is no evidence to suppress. To the extent that Deida wished to challenge the admission of evidence found in vehicles owned by his co-defendants, such a desire would be futile because there is no evidence that Deida had property or possessory rights in those vehicles. *See United States v. Padilla*, 508 U.S. 77, 81 (1993) (defendant may not bring Fourth Amendment challenge to admission of evidence if he is unable to establish that his rights were violated). Moreover, even if he had standing, there is nothing to indicate that the searches were unlawful. The search of one of the vehicles, the Cadillac, was pursuant to a state search warrant. The search of the other vehicle, the Isuzu, was pursuant to the FBI's inventory policy after the FBI lawfully seized the vehicle. Deida's counsel was not ineffective for failing to file a meritless motion to suppress. *Matos*, 905 F.2d at 32.

> b. Failure to Investigate/Cross-Examine

Deida challenges his attorney's effectiveness in investigating the allegations against Deida and pursuing an effective cross-examination strategy. The decision to investigate is one that the court must assess with a "heavy measure of deference to counsel's judgments." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691). Counsel is not required "to investigate comprehensively every lead or possible defense" and is not constitutionally deficient if he fails to pursue an investigation that he has reason to believe would be fruitless or even harmful. *See Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691).

General challenges to counsel's trial strategy are ordinarily "insufficient to establish his attorney's ineffectiveness." *Simmons*, 923 F.2d at 956. "[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer," and a court "should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." *See United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998); *see also Krutikov v. United States*, 324 F. Supp. 2d 369, 371 (E.D.N.Y. 2004); *Ozuru v. United States*, 1997 WL 124212, at *4 (E.D.N.Y. Mar. 11, 1997).

In his petition, Deida argues that his counsel failed to investigate and/or present evidence to support his innocence, and that counsel failed to conduct an effective cross-examination of government witnesses. In the petition itself, Deida does not provide any specific examples of things that his counsel should have investigated further. Moreover Deida does not give examples of counsel's ineffective cross-examination of the government witnesses.

In his supplemental filing, Deida adds additional detail concerning those claims. Deida argues that his counsel was ineffective for failing to cross-examine government witnesses regarding a pair of black and yellow gloves that were found in the "getaway" car. Deida asserts

that the gloves were of significance because they resembled gloves visible in the bank surveillance camera footage and could potentially contain traces of DNA that would enable the government to identify the wearer. At trial, the government's forensic expert did not testify that Deida's DNA was found on the gloves. That omission, Deida argues, indicates that Deida's DNA was not found on the gloves; had Deida's counsel cross-examined the expert on that issue, counsel would have been able to establish that Deida was not the wearer of the gloves. Moreover, to the extent that DNA matching the cooperator was found in the gloves, the expert's testimony could be used to call into question the cooperator's claim that he had remained in the car while Deida and a third co-conspirator robbed the banks. Such testimony would cast doubt on all of the cooperators' testimony about Deida's involvement in the offense.

In reviewing Deida's claims, I am mindful of the fact that I "should not second-guess [counsel's] decisions [regarding direct or cross-examination] unless there is no strategic or tactical justification for the course taken." *See Luciano*, 158 F.3d 655, 660. Here, though Deida puts forward an insightful theory of why a certain trial strategy could have been effective, Deida fails to establish that his counsel's decision not to cross-examine about the DNA results lacked any strategic or tactical justification. Deida's counsel reasonably could have decided not to cross-examine the expert on the DNA issue because counsel was concerned the expert's testimony might implicate his client. Had the expert testified that the DNA results could not exclude Deida as the wearer of the gloves, such evidence would be harmful to the defense. In that circumstance, it would have been wise for counsel not to pursue that line of questioning. Because it is impossible to know what the expert would have said, I cannot conclude that counsel was ineffective for failing to broach the unknown on cross-examination.

With respect to other allegations that have not been discussed in detail, it is impossible to address whether Deida's counsel was ineffective. A review of the record does not indicate any egregious errors in how attorney Cretella investigated the case and/or conducted cross-examination.

     c.    Failure to Raise "Good" Issues on Appeal

Finally, Deida contends that his counsel was ineffective for failing to properly appeal his conviction. *Strickland*'s familiar two-part test "applies in the appellate context as well as at trial." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015). Though counsel "has no duty to raise every non-frivolous issue that could be raised . . . [counsel may not] omit[] significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)) (internal quotation marks omitted).

Deida argues that his appellate counsel was ineffective by failing to raise viable appellate issues concerning Deida's conviction. Deida does not set forth the issues his counsel failed to appeal. A review of the record indicates that Deida's counsel raised multiple arguments on appeal. Deida does not identify, and I do not find, any specific issue that his appellate counsel should have raised on direct appeal. To the extent that Deida argues that appellate counsel should have raised issues on direct appeal that were raised in the instant section 2255 proceeding, such a claim lacks merit because there is not a reasonable probability that those claims would have succeeded on direct appeal. *See Lynch*, 789 F.3d at 311.

    2.  *Deficient Performance Prejudiced the Defense*

Even if Deida could establish that his counsel was ineffective, Deida cannot demonstrate prejudice, because his is unable to establish that the result of his proceeding would have been different. *Strickland*, 466 U.S. at 694. Strong evidence of guilt will weigh against a finding that

a defendant was prejudiced by his counsel's ineffectiveness. *See Simmons*, 923 F.2d at 956 (denying ineffective assistance of counsel claim because, due to "plethora of evidence" against defendant, there was "little reason to believe that alternative counsel would have fared any better"); *United States v. O'Neil*, 118 F.3d 65, 73 (2d Cir. 1997) ("In the face of the overwhelming evidence against him, [the defendant] cannot show that there is a reasonable probability that, but for the alleged trial errors, the outcome of the trial would have been different.").

There is no indication that, had Deida's counsel filed a motion to suppress, investigated Deida's claims of innocence further, more effectively cross-examined the government's witnesses, or raised more viable issues on appeal, the result of the proceeding would have been different. The evidence against Deida included eyewitness testimony from an actual participant in the robberies who testified that Deida was involved in both offenses, telephone records that indicate calls placed from a participant in the robberies to Deida at/around the time that the events took place, cell site location records placing Deida at or near the scene of the alleged crimes, and DNA evidence that linked Deida to a disguise that was used in connection with the second robbery. In the face of such overwhelming evidence and without any egregious errors by counsel at trial or on direct appeal, it is impossible to conclude that the results of the proceeding would have been different had counsel altered his approach.

C. <u>Constitutionality of Deida's Sentence</u>

Deida contends that his sentence is illegal because (1) his sentence was based on facts found by a judge, not a jury; (2) I failed to properly sentence him using the categorical and/or modified categorical approach; (3) I failed to consider the correct documents in finding that he

had been convicted of at least two qualifying offenses; and (4) the sentence imposed was based on a statute that is void for vagueness.

## 1. *Sixth Amendment Claim*

Deida's first claim is that his sentence violated his Sixth Amendment right to a jury trial because it was imposed on the basis of facts found by me, the sentencing judge, and not a jury. Deida is correct that his sentence is based, in part, on facts found by a judge and not a jury. I examined the record of Deida's prior convictions and determined that, on the basis of those convictions, he was subject to a mandatory life sentence under the "Three Strikes" provision of 18 U.S.C. § 3559(c). Deida is also correct that the procedure followed in his case arguably runs afoul of the principle that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

Unfortunately for Deida, that argument was raised by Deida on his direct appeal and was specifically rejected. *See United States v. Deida*, 682 F.2d 201, 204 (2d Cir. 2012) (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) ("Deida's argument that prior convictions subjecting a defendant to life imprisonment under § 3559 must be found by a jury in a bifurcated jury trial is also without merit."). Although it is not clear, after *Apprendi*, that *Almendarez-Torres* is still good law, *see Wiggan*, 2016 WL 4179838, at *2 n.3 (recognizing that *Almendarez-Torres* is arguably "incorrectly decided"), I am not in a position to permit Deida to litigate issues that were raised and rejected on direct appeal. *Cabrera*, 972 F.2d at 25; *see also Alleyne v. United States*, 133 S. Ct. 2151, 2160 n.1 (2013) (declining to revisit *Almendarez-Torres* because issue not properly raised by the parties).

2. *Use of Categorical Approach*

Deida argues that I used an improper analysis to determine whether his prior convictions qualified him for a mandatory sentence enhancement under section 3559(c). To determine whether a prior conviction is a qualifying conviction, the court must engage in what is referred to as "the categorical approach." *See Taylor v. United States*, 495 U.S. 575, 599 (1990). Under the categorical approach, the court must "identify 'the minimum criminal conduct necessary for conviction under a particular statute.'" *United States v. Hill*, 832 F.3d 135, 139 (2d Cir. 2016). The court may only examine the elements contained in the statutory definition of the predicate offense—not the underlying facts of conviction—to determine whether the conviction meets the criteria of a certain category of offense. *Taylor*, 495 U.S. at 577. If a person can be convicted under the statute without engaging in conduct that is categorically violent, a conviction under that statute cannot serve as a qualifying conviction under the categorical approach. *Descamps v. United States*, —— U.S. ——, 133 S. Ct. 2276, 2288 (2013).

There are, however, a "narrow range of cases" in which a court may look "beyond the statutory elements" of the crime to determine whether it is a qualifying conviction. *Descamps*, 133 S. Ct. at 2283–84. When a statute defines a crime by listing alternative elements, sentencing courts employ what is referred to as the "modified categorical approach"[3] to discern which of the alternative elements is integral to the defendant's conviction. *Mathis*, 136 S. Ct. at 2249. Under that approach, courts look to a limited class of documents to determine "what crime, with what elements, a defendant was convicted of" before comparing that crime's elements to those of

---

[3] I provide background on the modified categorical approach outlined in *Descamps* notwithstanding the fact that *Descamps* is not retroactive on collateral review. *Groves v. United States*, 755 F.3d 588, 593 (7th Cir. 2014). As will be discussed below, even if it were retroactive, it did not factor into my analysis because I was able to determine that Deida's prior convictions qualified under the categorical approach.

the generic offense. *Id.*; *see Shepard v. United States*, 544 U.S. 13, 23 (2005) (identifying which documents may be considered).

Even if the modified categorical approach is employed, a court may not use the particular facts supporting the prior conviction to enhance the defendant's sentence. *Mathis*, 136 S. Ct. at 2253. The underlying facts of conviction may only be used to "determine which elements played a part in the defendant's conviction." *Id.* (quoting *Descamps*, 133 S. Ct. at 2285) (internal quotation marks and alterations omitted). The Court in *Mathis* summed up the modified categorical approach:

> In other words, the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque . . . It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense.

*Mathis*, 136 S. Ct. at 2253–54 (internal citations omitted).

On June 21, 2011, I held a hearing to determine Deida's sentence. At the hearing the government introduced evidence that Deida has been convicted of the following state law offenses: (1) On January 21, 1983, he was convicted of first-degree robbery, in violation of Conn. Gen. Stat. § 53a-134(a)(2); (2) On that same date, he was also convicted of first-degree assault, in violation of section 53a-59(a)(1)[4]; and (3) on September 6, 1988, he was convicted of first-degree manslaughter, in violation of section 53a-55(a)(1). Deida does not contest that he was in fact convicted of those offenses. Rather, he asserts that I improperly applied the categorical approach and/or modified categorical approach at sentencing to determine whether those crimes constituted violent felonies.

---

[4] Deida was also convicted of violating section 53a-211a(a) (possession of sawed-off shotgun or silencer), but the government does not rely on that offense as a qualifying offense under 18 U.S.C. § 3559(c).

Having reviewed the sentencing transcript, I find nothing to suggest that I applied the modified categorical approach and nothing to suggest that I improperly applied the categorical approach. Upon receiving testimony regarding the fact of Deida's prior convictions, I found that each of those offenses constituted a "serious violent felony within the meaning of [18 U.S.C. § 3559(c)]." June 21, 2011 Sentencing Tr. at 18 (doc. # 110). I informed the parties that I would be willing to expand on that finding and neither party sought further explanation. Nor should they have. At that time, each of those offenses (first-degree robbery, first-degree assault, and manslaughter) fell squarely within the definition of "serious violent felony" as defined by section 3559(c).[5] There is nothing to suggest that I relied on or needed to rely on any information other than the statutes themselves to determine that they constituted violent felonies.[6] Accordingly, I find no error in my application of the categorical approach.

3. *Use of* Shepard *Documents*

Deida argues that I improperly relied on certain documents to conclude that he had three prior qualifying convictions. To determine whether a prior conviction qualifies as a predicate felony under section 3559, a court is limited to an evaluation of "the statutory definition of the offense, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005).

Deida's citation to *Shepard* is unavailing because *Shepard* pertained to the documents that the district court may consult when looking for additional facts to determine the manner in

---

[5] Whether those offenses remain "serious violent felonies" under section 3559(c)'s residual clause will be discussed in Part III.C.4.
[6] At the hearing, the government did present evidence that each of Deida's prior qualifying convictions involved the discharge of a firearm. June 21, 2011 Sentencing Tr. at 26. That evidence was presented after I found that his prior convictions were serious violent felonies and thus did not affect my assessment of those convictions.

which the defendant violated a particular statute, including under which subsection the defendant was convicted. At sentencing, I relied solely on the mittimus—in essence, the judgment—and the statutory definition of each offense in order to determine that Deida's convictions were serious violent felonies; I did not go in search of additional facts in any court document.

The Second Circuit has held that "a document's mere characterization as a 'charging document'" does not automatically enable a court to rely on it in full. *United States v. Dantzler*, 771 F.3d 137, 144 n.2 (2d Cir. 2014). For example, a court may not rely on facts contained in a bill of particulars if it is not apparent that the defendant necessarily pleaded guilty to such facts when pleading guilty to the offense. Moreover, regardless upon which document the court relies, it must adhere to the general confines of the categorical approach and, when appropriate, the modified categorical approach. *See Taylor v. United States*, 495 U.S. 575, 599; *Descamps*, 133 S. Ct. at 2283–84.

At sentencing, the government called Laura Ferretti, a records clerk from the Connecticut Department of Corrections ("DOC"), to testify about Deida's prior convictions. *See* June 21, 2011 Sentencing Tr. at 10. She testified that she reviewed the records that the DOC possessed regarding Deida's prior convictions. The file consisted of a "mittimus" for each of Deida's prior state convictions. The mittimus for each conviction listed the date of disposition of the offense, name of the defendant, docket number of the case, date the sentence is to begin, date of birth, statutory citation for each count of the information of which the defendant had been convicted, the length of the sentence, and any other conditions. In Connecticut, a "mittimus is an official record of the conviction that is created by the court at the time of sentencing." *Diaz v. United States*, 2005 WL 1802230, at *2 (D. Conn. July 27, 2005). It is the state law equivalent of a judgment in a federal criminal case. *Id.* In fact, it is often referred to as a "judgment mittimus."

*See id.*; *Browdy v. Karpe*, 2004 WL 2203464, at *2 n.3 (D. Conn. Sept. 20, 2004), *aff'd*, 131 F. App'x 751 (2d Cir. 2005). As with judgments, a court may take judicial notice of a mittimus. *Browdy*, 2004 WL 2203464, at *2 n.3. Moreover, courts in this district have relied on a mittimus to support the existence of a prior qualifying conviction under a sentencing enhancement statute. *Diaz*, 2005 WL 1802230, at *2. In other jurisdictions, courts have recognized that a mittimus, like a final judgment, is "*Shepard*-eligible evidence." *United States v. Sosa*, 448 F. App'x 605, 608–09 (6th Cir. 2012); *see also Dantzler*, 771 F.3d at 146 n.4 (implicitly recognizing that judgments are *Shepard*-approved documents); *Villanueva v. United States*, 191 F. Supp. 3d 178, 191 n.9 (D. Conn. 2016) (approving of the use of a non-certified judgment under *Shepard*); *Johnson v. United States*, 2016 WL 7362764, at *9 n.13 (D. Conn. Dec. 19, 2016) (same). To determine whether each conviction qualified as a predicate felony, I relied solely on the mittimus corresponding to that conviction and the statutory elements for the offenses of conviction. June 21, 2011 Sentencing Tr. at 12–18. Because it was not error to rely on a mittimus for each offense, I did not improperly consider state court documents in making the requisite factual findings regarding Deida's prior convictions.

4. *Sentence Based on Unconstitutionally Vague Statute*

Finally, Deida contends that his sentence was imposed in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. Specifically, Deida argues that he received a mandatory life sentence based on a portion of the three-strikes statute, section 3559(c)(2)(F)(ii), that is unconstitutionally vague.[7]

---

[7] The government attempts to argue that Deida is procedurally barred for making that argument. As I have previously ruled, a defendant is not procedurally barred from raising an argument that, given the state of the law at that time, he had no incentive to raise on direct appeal. *See Wiggan v. United States*, 2016 WL 4179838, at *14 (D. Conn. Aug. 5, 2016).

Deida's argument relies on a recent decision of the United States Supreme Court, which declared that a similar provision of 18 U.S.C. § 924(e) was unconstitutionally vague. *See Johnson v. United States*, ⸻ U.S. ⸻, 135 S. Ct. 2551 (2015). In response, the government argues that section 3559(c)(2)(F)(ii) is unaffected by *Johnson* and is not otherwise unconstitutionally vague. In the alternative, the government argues that Deida's sentence is constitutional because it is otherwise supported by portions of the statute that are not unconstitutionally vague.[8]

The federal three-strikes law, section 3559(c), requires imposition of a term of life imprisonment if an individual is convicted of any one of a list of enumerated offenses, including federal bank robbery (18 U.S.C. § 2113(a)), after having already been convicted of two prior serious violent felonies. Section 3559(c)(2)(F)(ii) includes within the definition of "serious violent felony," any offense "that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." That portion of the statute is often referred to as the "risk-of-force" clause or the "residual clause." Deida argues that the risk-of-force clause is unconstitutionally vague. In support of his assertion, Deida draws a parallel between section 3559(c)(2)(F)(ii)'s risk-of-force clause and 18 U.S.C. § 924(e)(2)(B)(ii)'s residual clause, which was declared unconstitutional in *Johnson*.

   a.   Void-for-Vagueness Doctrine

The constitutional prohibition against vague criminal laws stems from the Fifth Amendment, which "guarantees that '[n]o person shall . . . be deprived of life, liberty, or

---

[8] Although the government's position could be read as asserting a harmless error offense, I construe it as raising an alternative basis for denying the petition. That is because the error of the type identified in *Johnson* is not amendable to *Brecht*'s harmless error review. *See Shabazz v. United States*, 2017 WL 27394, at *9 (D. Conn. Jan. 3, 2017).

property, without due process of law.'" *Hill*, 832 F.3d at 145. "The void-for-vagueness doctrine prohibits the government from imposing sanctions 'under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.'" *Welch v. United States*, ––– U.S. ––––, 136 S. Ct. 1257, 1262 (2016) (quoting *Johnson*, 135 S. Ct. at 2556).

The Supreme Court recently considered a vagueness challenge to a portion of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii). Under the ACCA, a defendant is subject to a mandatory sentence enhancement if he or she was convicted of unlawfully possessing a firearm and had at least three prior "serious drug offense" or "violent felony" convictions. 18 U.S.C. § 924(e). The ACCA defined "violent felony" as any felony that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* . . . .

18 U.S.C. § 924(e)(2)(B) (emphasis added). The italicized portion of the quoted passage is commonly referred to as the residual clause. In its recent ruling, the Court held that the residual clause was unconstitutionally vague. *Johnson*, 135 S. Ct. at 2557.

The Supreme Court identified three qualities of the residual clause that each contributed to the conclusion that it was unconstitutionally vague. First, the Court focused on the fact that the residual clause forces a court to estimate the potential risk posed by a certain crime. *Id.* at 2557 ("the residual clause leaves great uncertainty about how to estimate the risk posed by a crime"). The residual clause requires a court to assess risk based on "a judicially imagined 'ordinary case' of a crime[.]" *Id.*

Second, the Court pointed to the use of the phrase, "or otherwise involves conduct that presents a serious potential risk . . . ," as adding an additional level of uncertainty to the analysis.

Rather than evaluating a crime's potential risk of injury in a vacuum, a court is asked to "interpret 'serious potential risk' in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives." *Id.* at 2558. The Court was troubled by the fact that those offenses were "far from clear in respect to the degree of risk each poses." *Id.* (internal quotation marks and citations omitted). The Court focused in particular on the inclusion of burglary and extortion in the list of enumerated crimes. *Id.* at 2557. Their inclusion confirmed "that the court's task also goes beyond evaluating the chances that the physical acts that make up the crime will injure someone." *Id.* "The act of making an extortionate demand or breaking and entering into someone's home does not, in and of itself, normally cause physical injury." Rather, the risk of injury arises out of external elements that are only tangentially related to the elements of the crime. Accordingly, it is ambiguous whether a crime such as burglary or extortion poses a serious potential risk of physical injury. The manner in which the crime is committed—whether the burglary is committed in an occupied or unoccupied home, or whether an extortion is committed by threat of violence or some other threat will heavily influence the risk of potential physical injury. *See id.* Yet the manner of commission is not an element of the offense. By coupling the indeterminacy about how to measure the risk posed by a crime with the indeterminacy about how that risk compares with the risk posed by the enumerated offenses, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

Third, the Court focused on the difficulty that courts have had in applying the residual clause. The Court considered such difficulty as evidence of the statute's vagueness. *Id.* ("failure of 'persistent efforts . . . to establish a standard' can provide evidence of vagueness"). The

Court's "repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause confirm its hopeless indeterminacy." *Id.*

The Second Circuit recently had occasion to interpret the Supreme Court's decision in *Johnson* when considering whether 18 U.S.C. § 924(c)(3)(B)'s so-called "risk-of-force" or "residual" clause was void for vagueness. *Hill*, 832 F.3d at 144–45. Section 924(c)(3)(B) defines "crime of violence" as, inter alia, any offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." In concluding that section 924(c)(3)(B) was not unconstitutionally vague, the Court in *Hill* provided guidance concerning other similarly-worded statutes facing void-for-vagueness challenges. *Hill*, 832 F.3d at 145–49.

First, the Court recognized that section 924(e)(2)(B)(ii) was held to be unconstitutionally vague principally because of two separate features of the statute's residual clause, which "conspire[d] to make it unconstitutionally vague." *Id.* at 145 (quoting *Johnson*, 135 S. Ct. at 2557) (internal quotation marks omitted). Though each might have been "tolerable in isolation," *id.* at 146 (quoting *Johnson*, 135 S. Ct. at 2560), the statute was void for vagueness because of the twin difficulties of (1) evaluating the potential risk of injury caused by an offense; and (2) making that evaluation in the context of enumerated offenses that are ambiguous with respect to the degree of injury that each poses. *Id.* The Court in *Hill* distinguished section 924(c)(3)(B) from section 924(e)(2)(B)(ii) because it lacked the "double-layered uncertainty" contained in section 924(e). *Id.* Unlike 924(e)(2)(B)(ii), section 924(c)(3)(B) was not tied to a "mystifying list" of enumerated offenses and did not contain "indeterminate 'otherwise' phraseology." *Id.*

Second, the Court emphasized the difference between asking a court to evaluate whether there is a *substantial risk* that *physical force* would be used during the commission of a felony

and whether there is a *potential risk* that *physical injury* to another might result from that crime. *Id.* "Both the Supreme Court and this Court have noted that the language in the latter provision [(section 924(c)(3)(B)'s risk-of-force clause)] is both narrower *and* easier to construe." *Id.* at 148 (emphasis in original). Whether a crime, by its nature, poses a substantial risk that physical force will be used upon another can be determined by evaluating whether a crime is such that the "defendant must, in pursuing his intended criminal activity, risk having to intentionally use force to commit the offense." *Jobson v. Ashcroft*, 326 F.3d 367, 374 (2d Cir. 2003). On the other hand, evaluating whether a crime poses a serious potential risk of physical injury is a broader inquiry because it includes offenses in which the defendant unintentionally creates a potential risk of injury to another during the commission of the offense. *Id.* (crimes with a *mens rea* of recklessness do not qualify as crimes of violence under 18 U.S.C. § 16(b) because those crimes "lack any 'intent, desire or willingness to use force or cause harm at all'").

For those reasons, the Court in *Hill* held that section 924(c)(3)(B) was not unconstitutionally vague. In doing so, it departed from other circuits that have held that a nearly identical provision of 18 U.S.C. § 16(b) was unconstitutionally vague. Neither the Supreme Court nor Second Circuit has yet evaluated whether section 3559(c)(2)(F)(ii)'s risk-of-force clause is void-for-vagueness; I do so now.

   b.  Section 3559(c)(2)(F)(ii)

The pertinent portion of the statute at issue in this case reads as follows:

(F) the term "serious violent felony" means—

…

(ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another *or that, by its nature, involves a*

*substantial risk that physical force against the person of another may be used in the course of committing the offense . . . .*

18 U.S.C. § 3559(c)(2)(F) (emphasis added to reflect portion of the statute that is being

challenged as unconstitutionally vague). The statute's so-called residual or risk-of-force clause

mirrors section 924(c)(3)(B)'s risk-of-force clause, which was held to be constitutional in *Hill*.

*See Hill*, 832 F.3d at 149. Additionally, it contains the same attributes that the Second Circuit

identified as shielding section 924(c)(3)(B) from a vagueness challenge.

First, rather than being linked to a list of "confusing list of examples," the risk-of-force

clause is linked to "any other offense punishable by a maximum term of imprisonment of 10

years or more that has as an element the use, attempted use, or threatened use of physical force

against the person of another . . . ." 18 U.S.C. § 3559(c)(2)(F)(ii). A court assessing whether a

conviction qualifies under section 3559(c)'s risk-of-force clause is not required to compare the

potential risk that physical force could be used to the likelihood that force would be used in other

enumerated offenses. *See Hill*, 832 F.3d at 146. Though a portion of section 3559(c)'s

definition of "serious violent felony" does contain a list of enumerated offenses, *see* 18 U.S.C. §

3559(c)(2)(F)(i), its risk-of-force clause is not directly tied to those enumerated offenses because

the clauses are in separate subsections. That is in contrast to the residual clause in section

924(e)(2)(B)(ii), which is located in the same subsection as other enumerated offenses and is

directly linked to that "mystifying list" of offenses by means of "indeterminate 'otherwise'

phraseology." *Hill*, 832 F.3d at 146. Under section 3559(c)(2)(F)(ii), a court asked to determine

whether the nature of an offense is such that it poses a substantial risk that physical force will be

used against another must only look to the offense itself. Such inquiry is analogous to the

inquiry in section 924(c)(3)(B), which does not link the risk-of-force clause to a confusing list of

examples. *Id.* at 144 n.13. In that respect, section 3559(c)'s residual clause is no different than

section 924(c)(3)(B)'s risk-of-force clause.  Under both statutes, a court must evaluate whether the offense is one that, though it may not require the use, attempted use, or threatened use of force as an element, has elements that create a substantial risk that the defendant might have to "intentionally use force to commit the offense." *See Jobson*, 326 F.3d at 373–74.

Second, like the clause in section 924(c)(3)(B), section 3559(c)(2)(F)(ii)'s risk-of-force clause measures an offense by the risk that a defendant will use *physical force* during the commission of a crime, not by the potential risk that *physical injury* might result from the defendant's conduct.  That distinction is a material one.  *See Hill*, 832 F.3d at 148.  According to *Hill*, risk-of-force clauses are "narrower *and* easier to construe" than risk-of-injury clauses.  *Id.* (emphasis in original).  Though the Court in *Hill* does not elaborate on why that is the case, it draws from a case that recognized that a risk-of-force clause is more closely tied to the elements of the offense than a risk-of-injury clause.  *See Jobson*, 326 F.3d at 373–74.  A risk-of-injury clause requires a broader inquiry into the potential collateral, non-intentional, consequences of a defendant's conduct.  *Id.* at 373.

Finally, Deida may not rely on out-of-circuit case law holding that 18 U.S.C. § 16(b) is unconstitutionally vague.  In *Hill*, the Court explicitly acknowledged the parallel between section 16(b) and other criminal statutes (specifically, section 924(c)(3)(B)), and the fact that four other circuits had held section 16(b) to be void for vagueness.  *Hill*, 832 F.3d at 149.  The Court went on to expressly reject the reasoning in those decisions.  *Id.*  According to the Second Circuit, other circuits (1) greatly underestimated or misunderstood the significance of the list of enumerated offenses in the ACCA's residual clause; (2) ignored or minimized other textual distinctions between the language of section 924(e)(2)(B)(ii) and section 16(b); and (3) dismissed the significance of the Supreme Court's difficulty in interpreting the ACCA's residual

clause. *Id.* at 149–50. Because the Second Circuit did not find those cases persuasive, I cannot either.[9]

Evaluating section 3559(c)(2)(F)(ii)'s risk-of-force clause in light of the Supreme Court's decision in *Johnson* and the Second Circuit's decision in *Hill*, I conclude that the clause more closely resembles the risk-of-force clause in section 924(c)(3)(B) that was considered in *Hill*. I therefore conclude that section 3559(c)(2)(F)(ii)'s risk-of-force clause is not void for vagueness. Because the statute is not unconstitutionally vague, I need not address whether Deida's prior convictions otherwise qualify under subsection (i) of section 3559(c)(2)(F).

## IV.    Conclusion

For the foregoing reasons, Deida's petition, as amended, is denied. The fact that Deida's legal arguments are rejected does not make his current period of incarceration any fairer. Deida was sentenced to life imprisonment because he committed two dangerous offenses over eighteen years before he was sentenced in this case. Although I do not doubt the seriousness of the offenses for which he was convicted in this court in 2010, I also recognize that Deida's sentence was increased dramatically based on prior convictions for first degree robbery and first degree assault that occurred when Deida was twenty years old. That sentencing enhancement was mandatory once the prosecutor filed the section 851 information; the prosecutor's decision precluded the sentencing judge from exercising discretion based on the unique facts of Deida's individual case. Deida is now fifty-three years old. Had I sentenced him to a Guideline

---

[9] When describing a qualifying offense under their respective risk-of-force clauses, sections 16(b) and 924(c)(3)(B) both use the phrase "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Section 3559(c)(2)(F)(ii) contains the phrase "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." The only textual difference between the risk-of-force clauses in those statutes and section 3559(c)(2)(F)(ii) is that section 3559 omits the words "or property," and only punishes a risk of physical force against a "person." In that respect, it is even narrower, and correspondingly less susceptible to a vagueness challenge than the other two statutes. *See Hill*, 832 F.3d at 148.

sentence, he would be eligible for release before he turned seventy.  Although Deida would then have spent more time in prison than as a free man, such a sentence would at least give him hope of one day living in freedom.  In his old age, Deida would not likely pose a meaningful threat to society and would have served just punishment for his offenses.  Deida should not be incarcerated for the remainder of his life, but that is the result of the three-strikes statute and the prosecutor's exercise of sentencing discretion.

Deida is granted a certificate of appealability with respect to whether 18 U.S.C. § 3559(c)(2)(F)(ii) is void for vagueness, but not with respect to the other issues he raises.  Deida has established that jurists of reason could disagree with my conclusion that, based on the Second Circuit's evaluation of 18 U.S.C. § 924(c)(3)(B) in *Hill*, 832 F.3d at 146, section 3559(c)(2)(F)(ii) is not unconstitutionally vague.  The Clerk shall enter judgment and close the file.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of June 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge